2002 OK CIV APP 18

**HENSON CONSTRUCTION COMPANY, Plaintiff/Appellant,**

v.

**David DAVIS, d/b/a Davis Heating and Air, Defendant/Appellee.**

**No. 95,377.**

Court of Civil Appeals of Oklahoma, Division No. 3.

Nov. 2, 2001.

Certiorari Denied Jan. 14, 2002.

---

2. *See* n. 1 infra.

Matthew Neill Davis, Enid, OK, for Plaintiff/Appellant.

Edward E. Sutter, Westline H. Ritter, Alva, OK, for Defendant/Appellee.

*OPINION*

GARRETT, Judge:

¶1 This case considers the question of whether the trial court erred in finding Appellant, Henson Construction Company, as contractor, breached its contract with Appellee, David Davis, d/b/a Davis Heating and Air, a heat and air sub-contractor, for the construction of Homestead Retirement Center in Alva, Oklahoma. Henson claims Davis failed to perform as promised. Henson terminated its sub-contract with Davis and hired another company to complete the job. As a result, Henson incurred out of pocket expenses and sued Davis to recover its costs. Davis filed a cross-claim against Henson for its failure to pay Davis the entire amount of the progress payment for which work was performed under the contract. Davis claimed it performed as promised under the contract, but that Henson breached the contract when it refused to pay for work already performed. The case was tried to the court without a jury. The trial court ruled in favor of Davis and ordered Henson to pay $28,576.00 for labor and services provided. This appeal followed.

¶2 Henson contends the court erred in finding fault only in Henson's performance of the contract, whereas the court should have found Davis substantially breached the contract.

¶3 The trial court's order provides as follows:

1. That Plaintiff, Henson Construction Company, is awarded no judgment for his claim against the Defendant and Third–Party Plaintiff, David Davis d/b/a Davis Heating and Air Conditioning.

2. That Defendant and Third–Party Plaintiff, David Davis d/b/a Davis Heating and Air Conditioning is hereby awarded judgment in the sum of $28,576.00 for their claim against the Plaintiff, Henson Construction Company, for labor and services provided.

3. That the issues of costs, attorney fees, and interest are not being determined at this time.

¶4 Michael Chase, the project architect, testified he made approximately thirty trips

to the project site and prepared inspection reports each trip. Copies were sent to Henson and the Alva City Manager. He said he always visited the premises before reviewing an application for certificate of payment, which was prepared by Henson and mailed to him. Chase testified Henson signed the applications for payment of the sub-contractors, but that Chase would not have signed them if Henson had not signed. The monthly applications for payment contain a statement, which is signed by the general contractor and the architect, that all of the work described had been done for a particular time period. It also contained a statement that all prior bills which had been submitted had been paid. He stated that if he had known the payment for the previous month was not paid, he would not have signed the application for the period of April 23, 1998 to May 21, 1998, and the Alva Utility Board would not have paid the requested amount.

¶ 5 Chase said it rained a great deal during the project. The project went over the time estimate, and the City added 33–36 days for rain. Henson received 100 days worth of "rain days" for non-workable days which were added to the length of time for the project. He described some of the problems with the project. He said Henson and the City disagreed on whether it was too wet to send a crew out. Also, Carrier air-conditioning units were put in wings of the building which had no roof when it rained. The heat and air intakes were sheet rocked over. He said there were some good sub-contractors and some who were not so good. However, he said the majority of the problems were due to the inexperienced job superintendent, Dennis Meier. Chase described Meier as someone who was not in control and who could not read a set of plans. He said there was a lack of coordination by Meier as to the sub-contractors on the project. Chase stated the general contractor, Henson, is ultimately responsible to move the sub-contractors along and complete the project. Chase thought the quality of Davis' work was acceptable and that there was nothing wrong with the duct work.

¶ 6 During the time period in question, March 26, 1998 to April 22, 1998, he said approximately 70% of the project was completed. A sum of approximately $58,000.00 was requested by Davis, and Henson signed the application, stating he had paid all prior bills and that a certain percentage of the work had been completed. However, Henson paid Davis only $12,000.00, despite the $58,000.00 request, and despite Henson's signature that approximately 77% of the property was completed. He was not aware that Henson had withheld money from Davis. Chase said he did not think Henson drew down more money than he was supposed to get at any one time. However, he later said that if he had known Henson did not pay Davis the full amount requested and certified by Henson, he would not have signed the application which stated that all prior bills had been paid. He said Henson commented that Davis was behind on the project. He did not recall discussing whether Henson had paid Davis in full, and Henson did not provide Chase with documentation to show what plans or specifications Davis was not following.

¶ 7 The City of Alva Inspector, Gerald James Gindlesberger, echoed Chase's opinion about the inefficiency of the job superintendent, Meier. He testified it had problems and that he didn't think "it was a well run job". He also mentioned Meier's ordering the installation of the air-conditioning mechanical units in a wing that was not "dried in", or waterproofed. He stated it was necessary during this project to issue a Stop Work Order. He had advised Meier that the nailing of the structural panels was not done in accordance with code, and that it needed to be corrected. Approximately a week later, it was not corrected, and Gindlesberger issued the order, and the project shut down about six or seven days. He said this was an unusual occurrence in this type of project.

¶ 8 Chris Hunt, Davis' project manager, stated he estimated and submitted a bid on the project to Henson for the heating and air-conditioning work. He testified its subcontract with Henson called for PVC pipe, through which copper refrigerant lines were to be run, to be placed in the slab by a plumber. However, by the time Meier called Hunt to the job site, the slab was poured,

and the PVC pipe had not been placed in it. Hunt said he asked Meier about it, but was told Meier "didn't even know it was supposed to be in there." Davis then had to purchase an additional 34 rolls of copper tubing to run it "up and out walls, which made it longer runs. And the bid reflected the shorter runs when I bid it." This created additional work and cost to Davis.

¶ 9 Hunt also testified when he arrived on the site, Meier did not have any furnace closets ready to install Davis's equipment. After they waited for the first one to be ready, Hunt helped Henson build them by cutting lumber, nailing down decking and finishing the framing, in order to push them along. Hunt testified that besides the problems he had already referred to, the problems and delays on this project were, in general, caused by Henson's job superintendent, Meier. He explained:

> Well, he couldn't—he couldn't schedule the job. He could not schedule the subs and coordinate all the subs to work together so we all could get our jobs finished. We'd all be stepping over each other.
>
> . . .
>
> And that was brought up to me by several trades.

¶ 10 Hunt also stated Meier did not have the respect of the other subcontractors,

> Because he couldn't adequately do the job right. He couldn't—he couldn't answer your questions when you'd come in and ask him about the blue prints. You'd ask him what goes—you know, we have a question and he was lost. He—the job, in my opinion, was too big for him. I don't think he could adequately run it.

¶ 11 Hunt testified he believed Henson breached the contract because he refused to pay the third draw. He was only paid $12,000.00, when approximately $56,000.00, less retainage, was due. Hunt also testified this created a hardship for Davis, a small company, and set it back so that it did not have the funds to finish the job. He advised Davis to cash the $12,000.00 check and terminate the contract with Henson, which he did.

¶ 12 The trial court made the finding that Davis was entitled to judgment for labor and services performed. Despite Henson's attempt to argue Davis was slow and behind schedule, the testimony at trial contained numerous references to the inadequacy of the job performed by Henson's Job Superintendent, Meier. The trial court was presented with a significant amount of testimony that delays and expenses existed because Meier did not adequately and professionally oversee the job. Moreover, Chase, the project architect, testified, and the record shows, Brian Henson signed the requests for progress payments for Davis, asserting the job was completed to a certain extent, and that all other sub-contractors for which payment was previously requested, had been paid, which was false. The testimony by several witnesses was to the effect that Davis' heating and air-conditioning work was being done satisfactorily.

■■■■ ¶ 13 The failure to pay a sub-contractor a progress payment due under a contract constitutes a substantial breach of contract by the general contractor and gives the sub-contractor the right to terminate the contract and recover the value of the work performed. See *M & W Masonry Const., Inc. v. Head,* 1976 OK CIV APP 34, 562 P.2d 957. Although the trial court noted the testimony was disputed, a finding was made at the trial that Henson's claims had not been substantially proved. However the court found there was substantial evidence to support Davis' cross claim "in certain regards." The court found Davis was not properly and timely notified by the contractor of the outset of the project and that the "so-called concrete slab problem" became an integral part of an ongoing series of problems, including the weather. The court determined the "real triggering mechanism" was "the lack of notification on a timely basis of the start of the project; the pouring of the slab and the installation of the PVC." The court further stated this could be traced in substantial part to Henson's Superintendent who perhaps was "the principal problem in the whole project." The court was also concerned about Henson's sworn statements, as to payments made to suppliers, which were obviously not true.

¶ 14 In determining damages, the court deducted the retainage, 10% of the progress payment withheld by the contractor, from

the final payment to Davis. The court found Davis had not completed the entire job which was a requirement to receive the retainage withheld by Henson. However, the court awarded Davis its damages for the PVC pipe situation, retainage fees from the two previous progress payments, and the remainder of the third progress payment, after deducting the $12,000.00 already received and the payments to the suppliers, for a total award of $28,576.00. Davis has not appealed the amount of the award, and we find it is supported by competent evidence.

¶ 15 The findings of a trial court sitting without a jury in a case of legal cognizance are to be given the same weight on review as that which would be accorded the verdict of a well-instructed jury. *Sides v. John Cordes, Inc.,* 1999 OK 36, 981 P.2d 301. If there is any competent evidence tending to support the findings and judgment of the trial court at a bench trial of a law case, the findings and judgment will not be disturbed, even if the record might support a conclusion different from that reached by the trial court. *Id.* Under the evidence presented in this case, we hold the trial court's findings and judgment are supported by competent evidence. The judgment is AFFIRMED.

¶ 16 HANSEN, C.J., and BUETTNER, P.J., concur.